<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **LISA HALL**,<br><br>Plaintiff,<br><br>v.<br><br>**RELIANCE STANDARD INSURANCE COMPANY**,<br><br>Defendant. | Civil Action No. 23-20761 (ZNQ) (RLS)<br><br>**OPINION** |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon Cross-Motions for Summary Judgment. Defendant Reliance Standard Insurance Company ("Defendant") filed a Motion for Summary Judgment ("Motion", ECF No. 25), a brief in support ("Def. Mov. Br.", ECF No. 25-13), and a Statement of Facts ("DSOF", ECF No. 25-12). Plaintiff Lisa Hall ("Plaintiff") filed a Cross-Motion for Summary Judgment ("Cross-Motion", ECF No. 27), a brief in support ("Pl. Moving Br.", ECF No. 2), and a Statement of Facts ("PSOF", ECF No. 26-3). Both Plaintiff and Defendant filed an opposition and a reply. (ECF Nos. 29, 30-1, 31, and 32.)

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will GRANT Defendant's Motion and DENY Plaintiff's Cross-Motion.

I.    **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff brings this action against Defendant for the recovery of long-term disability benefits under Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).

Plaintiff, a registered nurse, was employed by Robert Wood Johnson University Hospital ("Robert Wood") as a clinical nurse instructor from 2005 to 2015.  (PSOF ¶ 4.)  Plaintiff was eligible for certain employee benefits, including long-term disability insurance benefits under Robert Wood's long-term disability plan (the "Plan").[1]  (*Id.* ¶ 1.)  Benefits under the Plan were derived from a long-term group disability policy (the "Policy") issued by Defendant.  (*Id.*; DSOF ¶ 1.)  Defendant was the payer of benefits and the plan administrator.[2]  (PSOF ¶ 1.)  The Policy provides for "income replacement benefits for Total Disability from Sickness or Injury . . . subject to . . . terms and conditions."  (DSOF ¶ 2.)

In November 2015, Plaintiff was severely injured in a motor vehicle accident and has not returned to work.  (PSOF ¶ 5.)  Plaintiff's injuries included a concussion and cervical disc herniation, and she has since been suffering from post-concussive syndrome, traumatic brain injury, post-traumatic stress disorder, headaches, dizziness, neck pain, numbness in both hands, and back and muscle pain.  (*Id.* ¶ 14.)

In July 2016, Plaintiff applied for long-term disability benefits under the Plan.  (*Id.* ¶ 31.)  Dr. Seema Dixit, Plaintiff's Neurologist, completed the physician's statement section of the disability claim form and identified Plaintiff's primary diagnosis as "concussion, memory loss, [headaches]."  (DSOF ¶ 7.)  Dr. Dixit stated that Plaintiff was capable of sedentary work, including,

---

[1] The Plan is an employee welfare benefit plan within the meaning of ERISA.
[2] Under the Policy, Defendant, as the "claims review fiduciary," had the "discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits."  (DSOF ¶ 68; AR 15.)

standing and walking three to five hours per day but, significantly, was only "moderately" able to: "relate to other people beyond giving and receiving instructions," "complete and follow instructions," and "perform simple and repetitive tasks." (*Id.* ¶ 9–10.) Dr. Dixit additionally reported that Plaintiff was "extremely limited" in her "ability to perform complex and varied tasks." (*Id.* ¶ 10.)

On September 14, 2016, Defendant approved Plaintiff's long term disability claim. (*Id.* ¶ 15; ECF No. 25-3, Ex. A, Administrative Record, ("AR") 282.) Under the Policy, benefits commence after a 180-day "Elimination Period," which begins on the first day of "Total Disability," or the first day that an insured "cannot perform the material duties of his/her Regular Occupation."[3] (DSOF ¶ 12.) Defendant determined that Plaintiff had demonstrated a "Total Disability," or an inability to perform her job as a clinical nurse instructor. (AR 282; DSOF ¶¶ 12, 15.) Plaintiff's "Elimination Period" began on November 21, 2015, and was satisfied on May 19, 2016. (AR 282.) Defendant informed Plaintiff that she can expect future benefits each month if she "remain Totally Disabled." (*Id.*)

Relevant here, the Policy provides that to qualify for long-term disability benefits beyond 24-months, Plaintiff must demonstrate that she is "Totally Disabled," as in "cannot perform the material duties of Any Occupation," i.e., "an occupation normally performed in the national economy for which an Insured is reasonably suited based upon his/her education, training or experience." (DSOF ¶ 17; AR 9.) Moreover, at the 24-month mark, benefits for a disability will cease if the disability is "caused by or contributed to by mental or nervous disorders." (AR 23.) The Policy delineates the following conditions as mental or nervous disorders: (1) bipolar disorder (manic depressive syndrome); (2) schizophrenia; (3) delusional (paranoid) disorders; (4) psychotic

---

[3] An insured's "Regular Occupation" is "the occupation the Insured is routinely performing when Total Disability begins." (DSOF ¶ 13.)

disorders;   (5)   depressive   disorders;   (6)   anxiety   disorders;   (7)   somatoform   disorders
(psychosomatic illness); (8) eating disorders; or (9) mental illness.  (*Id.*)

In June 2018, Defendant requested records and physicians' statements from Plaintiff's
treating doctors to determine Plaintiff's continued eligibility, i.e., whether she was "Totally
Disabled."  (PSOF ¶¶ 33–34.)  Plaintiff submitted assessments conducted by Dr. Dixit and Dr.
Mott, a Psychologist.  Plaintiff visited Dr. Dixit every four to six weeks through 2018 and every
three months in 2019.  (AR 375.)  From January 3, 2018, to October 30, 2019, Dr. Dixit reported
that Plaintiff experienced headaches, fatigue, insomnia, anxiety, and memory and concentration
loss and that her symptoms largely did not change.  (AR 1118–1189.)  Dr. Dixit also reported that
Plaintiff suffered another head injury in February 2018 and physical therapy has not helped
Plaintiff's thoracic pain.  (*Id.* 1165.)  From June 10, 2019, to October 28, 2019, Dr. Mott reported
that Plaintiff is forgetful and experiencing cognitive fatigue but working on "acceptance of her
new self and nourishing herself with meditation and walks."  (*Id.* 1113–1115.)

On January 13, 2020, Defendant determined that Plaintiff did not "satisfy the definition of
'Totally Disabled'" and her disability claim would be terminated.  (DSOF ¶ 22, (Termination
Letter), AR 374.)  Defendant reasoned that Plaintiff's neurology exams conducted by Dr. Dixit did
not explain "what is precluding [her] from full time work function."  (AR 375.)

Plaintiff appealed from the claim termination through Defendant's internal review process.
(PSOF ¶ 36.)  The appellate record includes a June 23, 2020, letter from Dr. Dixit summarizing
Plaintiff's diagnosis as "post concussive syndrome, headaches, cervical disc herniation, dizziness,
impairment or processing speed, posttraumatic stress disorder, anxiety and insomnia."  (AR 1527–
1528.)  Dr. Dixit explained that Plaintiff "will not be able to return to gainful employment due to
her injuries" because Plaintiff's "memory has not significantly changed or improved to a point

where she can return to work" and she struggles with chronic pain from her headaches and neck. (*Id*. 1528.) Plaintiff also submitted a Neuro-Optometric Rehabilitation Analysis Report prepared by Dr. Vicci, an Optometrist, following his examination of Plaintiff in August 2020. (AR 4058–64.) Dr. Vicci noted that Plaintiff has a history of multiple concussions and has worsening "clarity of vision and double vision" since May 2020. (*Id.* 4063.) Dr. Vicci prescribed Plaintiff prescription lenses and noted that he would consider recommending occupational vision therapy in the future. *Id.*

As part of its review process, Defendant ordered an independent medical examination ("IME") which was conducted by Dr. Kutner, a Neuropsychologist, on August 17, 2020. (AR 380, 382.) According to Dr. Kutner's IME report, Dr. Kutner determined that Plaintiff suffers from a severe level of cognitive impairment due to brain injuries and diagnosed Plaintiff with somatic symptom disorder (as opposed to post-concussive syndrome) and chronic post-traumatic stress. (*Id.* 4015–16.) Dr. Kutner concluded that Plaintiff does not appear to suffer from a non-psychiatric related condition. (*Id.* 4016.)

Defendant then referred Plaintiff's case to an independent Neurologist and an Orthopedic Surgeon for review. (*Id.* 382.) The Neurologist, Dr. Meytin, listed Plaintiff's diagnoses as traumatic brain injury and cognitive impairment. (*Id.* 4033.) As to whether there was evidence to substantiate Plaintiff's "complaints and conditions," Dr. Meytin concluded that "there is no clear evidence in the notes provided that there is any neurological impairment that would cause restrictions/limitations at work." (*Id.*) However, regarding Dr. Kutner's diagnoses, Dr. Meytin provided that "[h]ow this specifically leads to restrictions is out of my scope of practice." (*Id.* 4033–34.) The Orthopedic Surgeon, Dr. Hulett, observed that Plaintiff "most likely sustained a cervical and lumbar strain in the [accident]" and "has disc pathology at C6/C7 and C7/T1 with

some chronic numbness and neck pain." (*Id.* AR 4044.)  Dr. Hulett noted that Plaintiff "has not been seen by her orthopedic surgeon Dr. Chiapetta since [June 12, 2016] nor has she had any PT/OT treatment for her orthopedic complaints since that time." (*Id.*)  Dr. Hulett further concluded that there "is no conclusive evidence based on physical examination or imaging since [May 2017] to substantiate any of her orthopedic complaints as of [December 1, 2019] . . . or thereafter." (*Id.*)  Defendant sent Plaintiff copies of Drs. Kutner, Meytin, and Hulett's reports and the opportunity to provide rebuttal information.  (DSOF ¶ 61.)

On October 13, 2020, Defendant upheld the termination of long-term disability benefits. Defendant noted that the "purpose of [its] review was to determine if [Plaintiff] was precluded from working on a full-time, consistent basis, from a physical standpoint."  (AR 4089.)  Relying on Dr. Kutner's assessment that Plaintiff did not suffer from a non-psychiatric condition as well as Dr. Meytin and Hulett's conclusions that Plaintiff did not suffer from "a physical point of view," Defendant determined that Plaintiff did not establish a physical disability.  (AR 4089.)

Defendant explained:

> Given that Ms. Falk was only found to be impaired from a cognitive and behavioral perspective, secondary to Mental or Nervous Disorders, and neither the independent Neurologist or Orthopedic Surgeon could find any limitations present as of December 1, 2019, from a physical point-of-view, we have found did not satisfy the definition of being Totally Disabled, absent any psychiatric component. Simply put, the Mental or Nervous Disorders limitation under the Policy precludes RLS from paying any benefits due to a Total Disability caused or contributed to by Mental or Nervous Disorders, after twenty-four (24) months of benefits have been paid for such, and this occurred on May 19, 2018. The totality of medical evidence supplied for consideration did not substantiate that additional benefits were/are payable to your client. As such, it is apparent to the Appeals Unit that the decision to end [Plaintiff's] claim under the Termination of Monthly Benefit provision (as detailed above) must be upheld.

(*Id.*)

Plaintiff filed a Complaint challenging the denial of benefits under 29 U.S.C. § 1132(a)(1)(B).  (ECF No. 1.)  Defendant filed an answer (ECF No. 4), and Plaintiff sought limited discovery on the issues of whether there was a structural conflict of intertest or a financial conflict as to the doctors that Defendant hired to review Plaintiff's medical records (ECF No. 8). Defendant did not seek discovery.  (ECF No. 8.)  Defendant and Plaintiff filed their respective motions on September 27, 2024.  (ECF Nos. 25 & 26.)

## II.    SUBJECT MATTER JURISDICTION

The Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e) and 28 U.S.C. § 1331 based on the Complaint's assertion of a claim under ERISA, 29 U.S.C. § 1001, *et seq*.

## III.    LEGAL STANDARD

### A.    SUMMARY JUDGMENT STANDARD OF REVIEW

Both parties move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  "Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." *Auto-Owners Ins. Co v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (citing Fed. R. Civ. P. 56(a)).  In reaching this decision, the court must determine whether "the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Favata v. Seidel*, 511 F. App'x 155, 158 (3d Cir. 2013) (quoting *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010)).  A disputed issue is "genuine" only if there is a sufficient evidentiary basis on which a

reasonable jury could find for the non-moving party. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"The same standards and burdens apply on cross-motions for summary judgment." *Allah v. Ricci*, 532 F. App'x 48, 50 (3d Cir. 2013) (citing *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987)). "When both parties move for summary judgment, '[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Auto Owners Ins. Co.*, 835 F.3d at 402 (quoting 10A Charles Alan Wright et al., *Federal Practice & Procedure* § 2720 (3d ed. 2016). In deciding a motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter but to determine whether there is a genuine dispute for trial. *Anderson*, 477 U.S. at 248–49.

### B.    ERISA STANDARD OF REVIEW

Under ERISA, a plan participant or beneficiary may sue in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "The statute, however, does not specify a standard of review for an action brought pursuant to § 1132(a)(1)(B)." *Hocknell v. Metropolitan Life Ins. Co.*, 276 F. Supp. 3d 292, 295 (D.N.J. 2017) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989)). Where, as here, "a plan affords the administrator with discretionary authority, courts must review the benefit decision for an abuse of discretion." *Id.* (citing *Conkright v. Frommert*, 559 U.S. 506, 517 (2010)); *see also Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 793 n.6 (3d Cir. 2010) (explaining that the description of the deferential standard of review as "arbitrary and capricious" or a review for "abuse of discretion" are interchangeable).

Here, the parties agree that the abuse of discretion/ arbitrary and capricious standard applies because the Policy gives Defendant discretionary authority to interpret the Plan and to determine eligibility for benefits. (PSOF ¶ 1; DSOF ¶ 68.) The arbitrary and capricious standard is deferential. "[A]n administrator's decision is arbitrary and capricious if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Miller v. Am. Airlines*, 632 F.3d 837, 845 (3d Cir. 2011) (quotations and citations omitted). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Soubik v. Dir. Office of Workers' Comp. Programs*, 366 F.3d 226, 233 (3d Cir. 2004). To decide whether an administrator's termination of benefits is arbitrary and capricious, courts "determine lawfulness by taking account of several different, often case-specific, factors, reaching a result by weighing all together." *Miller*, 632 F.3d at 855 (quoting *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008)). "Specifically, in considering the process that the administrator used in denying benefits, [courts] have considered numerous irregularities to determine whether . . . the administrator has given the court reason to doubt its fiduciary neutrality." *Id.* at 845. "The scope of [a court's] review, however, 'is narrow, and the court is not free to substitute its own judgment for that of the plan administrator in determining eligibility for plan benefits.'" *Connor v. Sedgwick Claims Mgmt. Servs., Inc.*, 796 F. Supp. 2d 568, 579 (D.N.J. 2011). A plaintiff, therefore, "retains the burden to prove that [s]he is entitled to benefits, and that the plan administrator's decision was arbitrary and capricious." *Hocknell v. Metro. Life Ins. Co.*, 276 F. Supp. 3d 292, 296 (Sept. 6, 2017).

Finally, because Defendant is responsible for both funding the Policy and determining eligibility for benefits, a structural conflict of interest exists. *Glenn*, 554 U.S. at 117 (finding a conflict of interest where the entity responsible for determining benefits eligibility also pays the

benefits).  Thus, "the governing standard requires the plaintiff to show that the denial of benefits was arbitrary and capricious, with a conflict of interest as simply one factor for the court's consideration."[4]

## IV.  **DISCUSSION**

Both parties have moved for summary judgment.  Before turning to the merits, the Court will briefly summarize the parties' positions.

Defendant moves for summary judgment on the grounds that its decision to terminate Plaintiff's long-term disability benefits was not arbitrary and capricious.  (Def. Mov. Br. at 1, 11, 14.)  In relevant part, Defendant argues that Plaintiff was denied further coverage under the Policy because it determined that Plaintiff was not "precluded from working on a full-time, consistent basis, from a physical standpoint" and Plaintiff was impaired from a mental or nervous disorder. (DSOF ¶ 67.)

Defendant concedes that Plaintiff satisfied her burden initially under the Policy's "Total Disability" requirement and was therefore awarded long term disability benefits on May 19, 2016. (DSOF ¶ 15.)  By December 2019, however, Defendant argues that the definition of disability changed, the Policy's "Mental or Nervous Disorders" provision had been triggered, and Plaintiff's medical condition had improved.  (Def. Mov. Br. at 9.)  Defendant submits that periodic review of the claim revealed that it was no longer supported because Plaintiff did not have a physical disability.  (*Id*. at 6.)

In Plaintiff's cross-motion, she argues that Defendant's decision to terminate long-term disability benefits was arbitrary and capricious because Defendant: (1) "wrongly concluded

---

[4] Here, Plaintiff does not assert that there was a conflict of interest or point to any facts suggesting that the inherent structural conflict had a direct impact on Defendant's decision to deny her long-term disability benefits.  In addition, Defendant hired independent physicians to conduct the IMEs and to examine Plaintiff's medical records on appeal.

Plaintiff's cognitive injuries had origins in her psychiatric condition rather than from . . . the injury to her brain"; (2) "ignored or failed to examine three head injuries Plaintiff suffered after the 2015 motor vehicle accident"; and (3) "downplayed or ignored the physical disabilities and chronic pain Plaintiff suffered that has impaired and restricted [her] ability to function not only in the workplace, but also in her everyday life." (Pl. Mov. Br. at 6.) Plaintiff argues that she suffered cognitive deficits as a direct result of the head trauma she sustained in November 2015 and Defendant's reliance on non-treating physicians over her treating physicians is evidence of an abuse of discretion. (*Id.* at 21.)

Thus, the question before the Court is whether Defendant's decision to terminate Plaintiff's long term disability coverage was unreasonable, unsupported by the evidence, or erroneous as a matter of law. For the reasons set forth below, the Court holds that Defendant did not abuse its discretion in denying Plaintiff's claim.

### A.    The Plan's "Mental or Nervous Disorders" Limitation

Under the policy, benefits are limited to 24-months for disabilities that are "caused by or contributed to by mental or nervous disorders." (DSOF ¶ 3.) Because of the Policy's "Mental or Nervous Disorders" limitation, to remain eligible for benefits past the 24-month mark, it was [Plaintiff's] burden to prove that she was totally disabled from any occupation solely due to a physical condition." *Krash v. Reliance Standard Life Ins. Grp.*, 723 F. App'x 106, 110 (3d Cir. 2018). In other words, "[i]t is not [Defendant's] burden to determine the existence of Plaintiff's disability; it is sufficient that [Defendant] determine, reasonably, that Plaintiff failed to satisfy [her] burden of proof." *Hocheiser v. Liberty Mut. Ins. Co.*, Civ. No. 17-cv-06096, 2021 WL 672660, at *17 (D.N.J. Feb. 22, 2021) ("*Hocheiser I*"), *aff'd*, Civ. No. 21-1533, 2023 WL 1267070

(3d Cir. Jan. 31, 2023) ("*Hocheiser II*").  As such, Plaintiff must establish that she suffered from a physical disability.

In *Michaels*, the Third Circuit noted that courts are divided as to "whether a disability plan's mental disorder limitation applies where a mental condition has a physical cause." *Michaels v. The Equitable Life Assur. Soc'y of U.S. Emps., Managers, & Agents Long-Term Disability Plan*, 305 F. App'x 896, 907 (3d Cir. 2009).  As here, *Michaels* held that where a claimant's mental disorders "appear to have been caused, or at least exacerbated, by physical injury does not change the characterization of these disorders as mental conditions." *Id.*  The Court is guided by the analysis in *Michaels*.  And, notably, "[w]hereas *Michaels* concerned a policy that said benefits are not payable if 'disability arises from or on account of . . . a mental condition,' the Policy here more clearly says that benefits are not payable for disability 'caused by or *contributed to* by mental or nervous disorders.'" *See Matteo v. Reliance Standard Life Ins. Co*., Civ. No. 18-11450, 2022 WL 819600, at *7 (D.N.J. Mar. 17, 2022) (analyzing whether the identical "Mental or Nervous Disorders" provision under a Defendant issued policy precluded the claimant from receiving long-term benefits).

Here, the Court finds that Defendant has fully articulated its reasoning in making its determination that Plaintiff did not have restrictions or limitations from a non-psychiatric condition that rendered her totally disabled from any occupation.  Defendant relies on numerous physician reports and medical findings to substantiate its denial of Plaintiff's benefits: (1) Dr. Kutner's report, diagnosing Plaintiff with somatic symptom disorder and post-traumatic stress disorder as of December 1, 2019 (AR 4087); (2) Dr. Kutner's conclusion that Plaintiff's conditions are psychiatric disorders (*id.*); (3) Dr. Meytin's conclusion that "functional impairment is not supported" (*id.* 4088); and (4) Dr. Hulett's conclusion that "from an orthopedic surgery standpoint,

[Plaintiff] . . . requires no restrictions or limitations of any sort." (*Id.*)  Considering the medical record as a whole, relied upon by Defendant in making its benefits determination, the Court finds the reports of the three independent physicians, including one Neuropsychologist, one Neurologist, and one Orthopedic Surgeon, to be sufficient evidence to support Defendant's conclusion that Plaintiff was no longer Totally Disabled within the meaning of the Policy.  Therefore, the Court cannot conclude that Defendant's decision to terminate benefits was "without reason, unsupported by substantial evidence or erroneous as a matter of law."  *Miller*, 632 F.3d at 845; *see also Cato v. Unum Life Ins. Co. of Am.*, Civ. No. 21-10056, 2022 WL 3013085, at *8 (D.N.J. July 29, 2022) (holding that an insurance company's determination that a claimant "was no longer eligible to receive long-term disability benefits was not arbitrary and capricious because the Record contains substantial evidence that to the extent [p]laintiff suffers from any continuing restrictions or limitations, they are due to mental illness and not a physical condition").

Moreover, it was not arbitrary and capricious for Defendant to rely on and give weight to the opinions of its own medical consultants to determine Plaintiff's eligibility.  *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003) (holding that "plan administrators are not obliged to accord special deference to the opinions of treating physicians").  As for Defendant's decision to reject Dr. Dixit's opinions, specifically Dr. Dixit's June 23, 2020, letter in support of Plaintiff's claim, Defendant argues that it did so reasonably because Dr. Dixit's diagnoses are related to "mental illness conditions" which, based on the Policy's terms, could no longer be relied on to support a Total Disability claim.  (Def. Mov. Br. at 12.)  So long as Defendant did not "arbitrarily refuse to credit [Dr. Dixit's] reliable evidence," Defendant was not obligated to give it "special weight."  *Michaels*, 305 F. App'x at 907.  Here, Defendant's proffered reason for rejecting

Dr. Dixit's evidence is not arbitrary. The Court therefore finds that Defendant's decision to terminate Plaintiff's benefits was not arbitrary and capricious.[5]

## V.    <u>CONCLUSION</u>

For the reasons stated above, the Court will GRANT Defendant's Motion and DENY Plaintiff's Cross-Motion. An accompanying Order will follow.


Date: April 29, 2025


                              s/ Zahid N. Quraishi
                              **ZAHID N. QURAISHI**
                              **UNITED STATES DISTRICT JUDGE**

---

[5] Given that the Court reaches its conclusion, it does not reach a second basis argued by Defendant in its briefing for denying Plaintiff's claim: her failure to establish that she was "Totally Disabled" within the meaning of the Policy insofar as she failed to demonstrate she was unable to perform "any occupation." (Def. Mov. Br. at 16–19; Defendant's Opposition Brief at 13–17.) The Court notes that Defendant did not reject Plaintiff's internal appeal on this second basis, but its appeal decision letter includes a non-waiver provision that preserved Defendant's unstated rights and defenses. (AR 4089.) Accordingly, the Court finds that Defendant did not waive this second argument.